448 A.2d 1097

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Alfred Roy BROWN, Appellant.**

Superior Court of Pennsylvania.

Submitted Nov. 10, 1980.

Filed July 30, 1982.

Sally A. Frick, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for the Commonwealth, appellee.

Before PRICE, CAVANAUGH and HOFFMAN, JJ.

CAVANAUGH, Justice:

This is an appeal by Alfred Roy Brown from a judgment of sentence for robbery, 18 Pa.C.S.A. § 3701. Appellant argues that he should be discharged because his pre-trial line-up request was improperly denied. Alternatively, appellant urges this Court to grant him a new trial on one or more of several grounds: (a) he was precluded from impeaching two Commonwealth witnesses with their prior inconsistent statements, (b) the guilty verdict was contrary

to law and against the weight of the evidence, and (c) the trial court erred in permitting the prosecution to proceed on an accomplice liability theory. Since we agree with appellant that his right to impeach the Commonwealth witnesses was improperly denied, the judgment of sentence is vacated and appellant's case is remanded for a new trial.

The instant charge arose from a robbery at Jean and Stan's Bar in Pittsburgh on May 11, 1977. According to bar patrons George Despert and Carolyn King, appellant entered the bar with another male and remained by the front door while his companion, holding the bartender at gunpoint, took money from the cash register and the bartender's pockets. The second male then told appellant to gather some cigarette packets, which he apparently did. The bartender was subsequently forced into the kitchen by his assailant and instructed to forfeit any other money. The several remaining bar patrons, including Despert and King, were told to do likewise when they were herded into a back room. Throughout the incident, appellant stood by the front door ushering in persons entering the bar.

Appellant, who testified in his own defense at trial, disputed the identification of him by Despert and King as mistaken. Instead, appellant testified that he was four and one-half hours away in Bethlehem, Pennsylvania, with his girlfriend Patricia Ganster. Ms. Ganster corroborated appellant's testimony.

Despert and King were the only bar patrons to identify appellant for the Commonwealth. The stipulated testimony of two other victims, William Faulk and Linwood Spivey, was that they could not identify appellant. A fifth victim, Milton Baker, testified for the defense that appellant was not the male by the front door because appellant's skin was too light.

The jury, opting to disbelieve appellant and his witnesses, convicted him of robbery on March 8, 1978. Post-verdict motions raising issues identical to those raised in the instant appeal were denied and appellant was thereafter sentenced to one to five years imprisonment.

■ Appellant first argues that he is entitled to a discharge because the court improperly denied his pre-preliminary hearing line-up request. We disagree. At the outset, we note that an accused does not have a constitutional right to a line-up. Furthermore, in *Commonwealth v. Sexton*, 246 Pa.Super. 30, 369 A.2d 794 (1977), *rev'd*, 485 Pa. 17, 25, 400 A.2d 1289, 1293 (1979), the Pennsylvania Supreme Court specifically "... declined to accept a per se rule that a pre-trial, pre-hearing lineup is mandatory in all cases." Nonetheless, the Court continued, "... where ... the issue of identification is legitimately at issue, a timely request for a pre-trial or pre-hearing identification procedure should be granted." *Ibid.*

■ Here, it is beyond question that identification was legitimately at issue. As in *Sexton*, the sole evidence linking appellant to the barroom robbery was the identification testimony of George Despert and Carolyn King, both of whom had no knowledge of appellant prior to the crime. However, this case differs significantly from *Sexton* in that both identification witnesses had an opportunity, prior to the preliminary hearing confrontation, to view appellant: Despert made a photograph identification of appellant on May 23, 1977, two weeks before appellant's line-up request was proffered;[1] King had seen appellant's picture in a local newspaper.[2] In any event, the record demonstrates that both witnesses had ample opportunity to observe appellant during the robbery.[3] Under these circumstances, while it may have been *preferable* to conduct a line-up in order to

1. On October 11, 1977, appellant's motion to suppress Despert's photograph identification on the ground that it was inherently suggestive was denied. That determination has not been challenged in this appeal.

2. This fact was elicited during the October 11, 1977, suppression hearing wherein appellant unsuccessfully sought to suppress King's preliminary hearing identification.

3. Appellant has not raised an objection to the suppression court's conclusion that there existed an independent basis for Despert's and King's in-court identification of appellant notwithstanding any impropriety in a prior identification procedure.

ameliorate any suggestiveness necessarily inherent in a courtroom identification, and to insure the reliability of identification evidence, we cannot say that the lower court lacked justification in disallowing it.

■ Secondly, appellant contends that the court improperly permitted the Commonwealth to proceed against him on an accomplice theory of criminal liability, 18 Pa.C.S.A. § 306.[4] Appellant was informed against on the charge of

4. 18 Pa.C.S.A. § 306 provides:

(a) **General rule.**—A person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both.

(b) **Conduct of another.**—A person is legally accountable for the conduct of another person when:

(1) acting with the kind of culpability that is sufficient for the commission of the offense, he causes an innocent or irresponsible person to engage in such conduct;

(2) he is made accountable for the conduct of such other person by this title or by the law defining the offense; or

(3) he is an accomplice of such other person in the commission of the offense.

(c) **Accomplice defined.**—A person is an accomplice of another person in the commission of an offense if:

(1) with the intent of promoting or facilitating the commission of the offense, he:

(i) solicits such other person to commit it; or

(ii) aids or agrees or attempts to aid such other person in planning or committing it; or

(2) his conduct is expressly declared by law to establish his complicity.

(d) **Culpability of accomplice.**—When causing a particular result is an element of an offense, an accomplice in the conduct causing such result is an accomplice in the commission of that offense, if he acts with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense.

(e) **Status of actor.**—In any prosecution for an offense in which criminal liability of the defendant is based upon the conduct of another person pursuant to this section, it is no defense that the offense in question, as defined, can be committed only by a particular class or classes of persons, and the defendant, not belonging to such class or classes, is for that reason legally incapable of committing the offense in an individual capacity.

(f) **Exceptions.**—Unless otherwise provided by this title or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:

(1) he is a victim of that offense;

(2) the offense is so defined that his conduct is inevitably incident to its commission; or

robbery, specifically that in the course of committing a theft, namely a theft of $60 from the cash register and 15 cartons of cigarettes, he put the victim (bartender) in fear of immediate serious bodily injury. The information thus charged appellant as a perpetrator of the robbery, and not as an accomplice. However, the descriptive paragraph contained in the information stated "Actor waited by the front door of the bar as co-actor Williams robbed victim at gun point. Actor had his hand in his pocket as if he had a weapon. Actor and Williams then fled from the bar."

Before trial, the prosecutor indicated his intent to proceed on an accomplice theory of liability and requested a ruling from the court as to whether an accomplice charge would be given. Following a defense objection on the grounds that the Commonwealth, not having charged appellant as an accomplice in the information, could not now go forward on that theory, the court agreed to give the requested jury instruction.

In *Commonwealth v. Perkins*, 485 Pa. 286, 401 A.2d 1320 (1979), an equally divided Supreme Court permitted a jury charge on accomplice liability although defendant was charged by information only as a principal. We think this case falls within the purview of *Perkins* and, furthermore, does not offend the sentiments of the dissenters in that case whose objection was based solely on the ground that the Commonwealth's belated effort to pursue an accomplice liability theory prejudiced defendant. In *Perkins*, the prosecution requested an accomplice charge the evening before

(3) he terminates his complicity prior to the commission of the offense and:

(i) wholly deprives it of effectiveness in the commission of the offense; or

(ii) gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

**(g) Prosecution of accomplice only.**—An accomplice may be convicted on proof of the commission of the offense and of his complicity therein, though the person claimed to have committed the offense has not been prosecuted or convicted or has been convicted of a different offense or degree of offense or has an immunity to prosecution or conviction or has been acquitted.

the jury was to be instructed notwithstanding the fact that the theory of accomplice liability was apparently expressly rejected throughout the trial. Here, on the other hand, the Commonwealth indicated its intent to proceed on an accomplice liability theory prior to the commencement of trial and requested an accomplice charge at that time. Its trial evidence, clearly directed towards establishing appellant's guilt as an accomplice, was in conformity with the descriptive paragraph contained in the robbery information. Appellant, therefore, cannot contend that he lacked notice that the Commonwealth intended to establish his guilt of robbery as an accomplice. *Compare Commonwealth v. Frey*, 271 Pa.Super. 168, 412 A.2d 629 (1979). Finally, appellant has failed to indicate, and we cannot comprehend, how his defense of alibi would have been altered even had he been specifically charged in the information as an accomplice. For these reasons, we do not find that appellant's second contention entitles him to a new trial.

We do, however, agree with appellant's third contention that the trial court improperly impeded his efforts to cross-examine George Despert and Carolyn King with their prior inconsistent statements. In this regard, appellant assails the court's conduct on two separate grounds: (a) its refusal to allow counsel to use, on cross-examination of Despert and King, inconsistent statements allegedly made by those witnesses to police after the robbery, and (b) its refusal to allow counsel to introduce police testimony as to those inconsistent statements. Although the former claim lacks merit, the latter contention is indeed meritorious. For the sake of clarity, we address them both.

Carolyn King was the first Commonwealth witness to identify appellant at trial as the male standing by the barroom door. In her description of appellant, she stated on both direct and cross-examination that he was not wearing glasses during the robbery. Appellant's counsel thereafter questioned her as to whether she recalled telling police, shortly after the incident, that appellant had been wearing glasses:

Q. Did you give a statement concerning what went on in the bar and also a description of the actors? Do you recall giving that to the police officers?

A. You mean in the bar?

Q. I'm saying after the robbery, do you recall giving a report to the police?

A. Yes.

Q. You do. And, do you recall what in fact you stated as a description of the actors? Do you recall stating that the one at the door had glasses?

Mr. Dobkin [prosecutor]: Your Honor, at this time, I do want to object. Unless the witness adopts the statement as her own, I think it's a matter of cross examination of a police officer who would take the stand. If she did not adopt that statement as her own, then, it's not testimony that she gave that indication to the police.

Mr. Bills [defense counsel]: I will show her the statement and see whether that refreshes her recollection.

The Court: Is that a signed statement?

Mr. Bills: No. It's a statement taken by the police officer.

The Court: You ask the police then.

Mr. Bills: I'll call the police on direct.

The Court: She can't take credit for nothing she didn't sign.

Mr. Bills: I'll probe that further. (N.T. 60–61).

Although the court refused to allow counsel to cross-examine King with the actual police statement, counsel then proceeded to elicit from King that she did not recall telling police whether or not appellant had been wearing glasses:

By Mr. Bills:

Q. Mrs. King, do you recall giving a statement to the police?

A. In the bar? Or at the preliminary hearing?

Q. No, in the bar.

A. Yes, I talked to two police officers.

Q. Did you state to them—do you recall stating to them that both individuals had glasses on?

A. The one behind the bar had rose-colored glasses on, like I said.

Q. Do you recall stating what the individual at the door had on, whether he had glasses or whether he didn't?

A. I don't recall. (N.T. 61).

Appellant now contends that he should have been permitted to cross-examine Ms. King with her statement given to police. We find, however, that the lower court acted properly in refusing this method of cross-examination.

"It is long settled that a prior inconsistent statement may be used to impeach a witness." *Commonwealth v. Hensley*, 295 Pa.Super. 225, 233, 441 A.2d 431, 435 (1982) (citations omitted).[5] In order to do so, there must be evidence that the statement was made or adopted by the witness whose credibility is being impeached. *Commonwealth v. Baez*, 494 Pa. 388, 394, 431 A.2d 909, 912 (1981). Here Ms. King explicitly stated that she did not recall telling police whether or not appellant wore glasses during the robbery. Thus counsel had not yet presented evidence that the witness made or adopted a prior statement inconsistent with her trial testimony. Under these circumstances, the court properly disallowed the use of the statement in counsel's cross-examination of Carolyn King.

Similar reasons apply to the court's refusal to permit cross-examination of George Despert with his allegedly inconsistent statement to police. Despert, the second Commonwealth witness to identify appellant at trial, was asked by appellant's counsel whether he recalled giving a statement to police on the day of the robbery. When Despert indicated that he did not recall having done so, counsel was permitted to show the witness his police statement. When

---

5. Pennsylvania adheres to the traditional common law evidential rule that a prior inconsistent statement of a witness may be introduced for impeachment purposes only. It is not substantive evidence. See *Commonwealth v. Waller*, 498 Pa. 33, 39, 444 A.2d 653, 656 n.2 (1982) in which the contrary rule espoused in this court's plurality opinion in *Commonwealth v. Loar*, 264 Pa.Super. 398, 399 A.2d 1110 (1979) was rejected.

For a summary and analysis of the law in other jurisdictions see Binder, The Hearsay Handbook, Exception 32.

Despert still could not recall having given a statement to police, counsel requested permission to read the statement to the jury. Since no evidence had yet been introduced that Despert made or adopted the statement, the court properly denied counsel's request. (N.T. 81–82).

■ The lower court did, however, abuse its discretion in disallowing police testimony regarding statements given by Despert and King shortly after the robbery. As we have noted, the court stated, during counsel's attempted cross-examination of King with her allegedly inconsistent statement, that any such statement should be proven by calling the police officer to whom it was made. However, when, at the close of the Commonwealth's case, counsel requested permission to call as defense witnesses the police officers who interviewed Despert and King, the court declined the request:

Mr. Bills: Could I put it on the record, then, I won't need the police officers if you are going to deny it. I'll make the offer, now, put this into evidence. I would ask the Court to permit me to call Detective Jamison as my witness. It's my understanding that Detective Jamison took a report on 5–11–77 at 5:00 p. m. from Mr. George Despert. I would ask that the Court permit me to call Detective Jamison and elicit whether or not this is a true and correct statement, whether or not he took this down from Mr. Despert. And, I submit that this statement would in fact be a prior inconsistent statement with George Despert's present trial testimony.

I would also ask the Court to permit me to call another police officer who interviewed Carolyn King, and to elicit the statement from the police report concerning the description of the actors, and also the events in question, and I would also offer this to the Court as a statement of a prior inconsistent statement of Carolyn King. I would do so by calling these individuals as my witnesses and eliciting whether or not they did in fact take the statements and whether or not these statements are true and correct. And, when these statements are read in conjunction with

the trial testimony of both George Despert and Carolyn King, they would be shown to be inconsistent with their testimony and, therefore, as impeachable testimony.

Mr. Dobkin: Commonwealth's position, Your Honor, would be that George Despert viewed the police report on the stand, reviewed it and stated to defense counsel that he doesn't recall making that statement, therefore, he did not adopt that statement as his own, and I don't believe it to be a sworn—

Mr. Bills: I would agree with counsel for the Commonwealth, it is not a sworn statement. But my understanding is that as long as the police officer would in fact be permitted to identify this as being a statement taken from George Despert and true and correct and accurate, if indeed they're inconsistent with George Despert and Carolyn King's present trial testimony, I would be permitted to do it as a matter of cross-examination and also as a calling of my witnesses in my direct case.

Mr. Dobkin: Just as simply, both witnesses did not adopt the statements as their own, and it's not a sworn, subscribed statement, therefore, I would object to it, the police report being admitted.

The Court: It will be denied.

Mr. Bills: All right. Can I make this part of the record, then?

The Court: If you want it.

Mr. Bills: All right. I have the four page police report marked as Defense Exhibit 1 and ask to be placed into the record.

The Court: Do you have any objections to that, Mr. Dobkin?

Mr. Dobkin: No, your Honor. (N.T. 98–100).

■ The common law has long recognized the right of a party to impeach the credibility of an adverse witness by introducing evidence that the witness has made one or more statements inconsistent with his testimony at trial, so long

as the inconsistency is not collateral to the issues in the case. Such an inconsistent statement need not be under oath. Nor need it be in writing. It is the substance of the statement, i.e., that it conflicts with the testimony of the witness at trial, that determines its admissibility, not its form.

An inconsistent statement may be proved by getting the witness on the stand to admit making it. But where, as here, the witness does not admit making the inconsistent statement, it may be proved by extrinsic evidence, such as the testimony of the person to whom the statement was made. It does not matter whether the witness denies making the inconsistent statement, or whether he says that he does not recall it. In either event, an adverse party has the right to introduce extrinsic evidence that the witness did, indeed, make the inconsistent statement.[6]

■ In this case identification testimony of Carolyn King and George Despert was the sole evidence linking appellant to the robbery. It was essential to his defense that he impeach their credibility. Since the identification of appellant was the critical issue at trial, it is quite possible that the excluded testimony of the police that the identifying witnesses had, shortly after the robbery, made statements inconsistent with their testimony at trial would have produced uncertainty in the jury's mind concerning their credibility at least sufficient to create a reasonable doubt as to the defendant's guilt. For this reason he is entitled to a new trial.[7]

Judgment of sentence is reversed and the case is remanded for a new trial.

**6.** We disapprove, and decline to follow, the dictum in footnote 13 in *Commonwealth v. Thomas*, 284 Pa.Super. 375, 385, 425 A.2d 1151, 1156 (1981).

**7.** Because of our disposition of this case, we need not address appellant's argument that the verdict was contrary to law and against the weight of the evidence.