466 A.2d 660

**COMMONWEALTH of Pennsylvania**

v.

**Charles McDUFFIE, Appellant.**

Superior Court of Pennsylvania.

Argued June 2, 1983.

Filed Oct. 7, 1983.

Jeremy T. Ross, Philadelphia, for appellant.

Steven J. Cooperstein, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, WIEAND and BECK, JJ.

ROWLEY, Judge:

This is a direct appeal from the judgment of sentence of a total of nine years probation imposed following a non-jury trial at which appellant was found guilty of robbery, possessing instruments of crime, theft, simple assault and criminal conspiracy. We affirm.

The facts were ably summarized by the trial court as follows:

On November 21, 1979, at approximately 2:00–3:00 A.M., Ruben Garnet, the complainant, was driving on an expressway in Philadelphia. Complainant was driving a Dodge and a friend of his named "Junior" was driving behind him in a 1954 Mercury.

A blue Pinto occupied by defendant and a Mr. Orlando Warren drove beside complainant and one of the occupants signalled him to pull over. Complainant pulled off the road beside the Pinto and "Junior" continued down the highway.

When complainant noticed that "Junior" had not also pulled off the highway, he drove back onto the road and followed him. After passing "Junior's" car, complainant was again forced to pull over to the shoulder of the highway by the occupants of the blue Pinto. [Complainant testified that the reason he stopped was that the passenger in the Pinto identified himself as a police officer, pointed a gun at him, showed a badge and told him to pull over.] "Junior" pulled over behind complainant and the Pinto stopped abreast of the driver's side of complainant's car.

One of the men alighting from the Pinto pulled a gun (later identified as a .25 caliber automatic), presented a badge and demanded complainant's driver's license and owner's card. When complainant attempted to comply,

the gunman snatched his wallet which contained approximately $1,900.00 in cash and 20 Pennsylvania lottery tickets.

The gunman then ordered complainant to get out of the car and open the trunk. With the gun still trained on him, complainant was ordered not to look back toward "Junior's" car where the gunman's companion had gone. When complainant opened the trunk, the gunman removed a slide projector and a suitcase containing pants and 8–10 [eight to ten] rolls of pennies. These items were then placed in the blue Pinto. The gunman took complainant's car keys and he and the other man drove off in the Pinto.

Shortly after these events transpired, the police located the blue Pinto and arrested the two occupants. A search of the occupants and the car uncovered the cash and other items which had been stolen. Appellant had been driving the car at the time it was stopped by the police.

Appellant was charged in five separate informations with robbery, possession of instruments of crime generally, theft by unlawful taking or disposition, theft by receiving stolen property, simple assault and conspiracy. Appellant was tried before the Honorable Louis G. Hill, sitting without a jury, and found guilty of these charges.[1] After post-trial motions were filed and denied, appellant was sentenced on the robbery conviction to nine years probation on condition that he comply with therapy and treatment programs to be recommended by the Adult Probation Department; the theft and simple assault convictions were held to have merged in the robbery conviction for the purposes of sentencing; appellant also received a five-year probationary term for possession of instruments of crime and a nine-year term of probation for conspiracy. All probationary terms were made concurrent. This appeal followed.

---

1. Appellant was acquitted of a second count of robbery, two counts of theft, simple assault and firearms violations charged in four other informations.

■ Appellant's first argument is that the court erred in finding him guilty of the charges as an accomplice. He argues that he was charged in the informations as "a principal in the commission of the crimes alleged." Imposing criminal liability on him as an accomplice, he argues, constitutes a "fatal variation ... between the allegations and proof." This "variance" entitles him to be discharged, he claims.

A similar argument was made in *Commonwealth v. Perkins*, 485 Pa. 286, 401 A.2d 1320 (1979). There an equally divided court affirmed the appellant's conviction and judgment of sentence. The justices voting for affirmance expressed the opinion that "a person could be held guilty as an accomplice even though charged only as a perpetrator." 485 Pa. at 290, 401 A.2d at 1321. Mr. Justice [later Chief Justice] O'Brien, in his opinion in support of affirmance, made reference to the comments to § 206 of the Model Penal Code. There it is pointed out that distinctions between different modes of complicity do not have a procedural significance. According to the comments, a charge of commission of a crime would be sufficient to warrant conviction as an accomplice.

Moreover, we are of the opinion that the facts in this case may be distinguished from the circumstances relied upon by the justices who voted to reverse the conviction in *Perkins*. In his opinion in support of reversal, Justice [now Chief Justice] Roberts emphasized that throughout the proceedings "the Commonwealth expressly rejected a theory of accomplice liability." He went on to point out that "the Commonwealth expressly represented it would not and did not pursue [a theory of accomplice liability] at trial. Appellant, on this record, could and did rely upon the Commonwealth's representation." Unlike the situation in *Perkins*, there was no express rejection by the Commonwealth of a theory of accomplice liability in this case. Moreover, the record before us shows that appellant should have been aware that liability might be imposed on him for the acts and conduct of Mr. Warren. In the initial complaint charg-

ing him with robbery, it was asserted that appellant "did with *another* hold up point of gun [sic] Claude Richardson". (Emphasis supplied.) Also in the complaint the *other* participant is identified as Orlando Warren. Finally, in Information No. 381, appellant is charged with two counts of criminal conspiracy. It is charged there that he "did agree with another person or persons that they or one" of them would commit the crime of robbery and also that he "did agree to aid another person or persons in the planning or commission of" the crime of robbery. Thus, appellant was clearly put on notice from the very outset that the Commonwealth claimed that he and Mr. Warren carried out the acts in question together and that they had agreed to act jointly and to aid one another in the commission of the crimes charged. Such notice was clearly adequate to alert appellant to the potential imposition of criminal liability as an accomplice of Mr. Warren.

■ Appellant's remaining claim on appeal is that the court erred in permitting an amendment to Information No. 381 of 1980 which changed the name of the victim from Claude Richardson, referred to as "Junior" by the trial court, to Ruben Garnett, referred to by the trial court as the complainant. We do not agree that the amendment was improper. Rule 229 of the Rules of Criminal Procedure states:

> The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

In *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166 (1979), affirmed, 498 Pa. 326, 446 A.2d 583 (1982), this court articulated the following standards for assessing the propriety of permitting an amendment to an information.

> The purpose of Rule 229 is to insure that a defendant is fully appraised of the charges against him, and to avoid

prejudice by prohibiting the last minute addition of alleged criminal acts of which the defendant is uninformed. In effecting this purpose, the courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Id.* 265 Pa.Super. at 212–213, 401 A.2d at 1175 (footnotes and citations omitted).

In the present case, no new or different crime was charged and appellant suffered no unfair surprise as a result of the amendment. Of the five informations on which appellant was found guilty, four alleged that the victim was Ruben Garnett. Appellant was, therefore, fully aware that Mr. Garnett was in fact the alleged victim in this set of crimes. Furthermore, the amendment effected no change in the crimes charged and did not necessitate defending against any new or different elements. Appellant's defense in this case was that he thought he was helping Orlando Warren collect a debt. It is immaterial with respect to this defense whether Warren attempted to collect the "debt" from Garnett or from Richardson. Moreover, the change did not alter in the slightest degree the "factual situation" in which these crimes were committed. The events of the early morning hours of November 21, 1979, are not significantly altered by the change in the name of the victim because the two persons, Garnett and Richardson, were at all relevant times in close proximity to each other during the commission of these crimes. Finally, we note that on October 23, 1981, the trial court held a hearing

on the Commonwealth's motion to amend Information No. 381. At the hearing, the assistant district attorney stated:

I would suggest then if there is a feeling that there was prejudice [to the defendant] that the defense be allowed to reopen it's [sic] case and take whatever remedies they wish if they feel they can show prejudice at some time.

At no time did defense counsel show any inclination to take advantage of this option. Also, as noted above, appellant's defense was such that the amendment did not prejudice him. For these reasons, we conclude that permitting the amendment of the information after the completion of the testimony was not error.

Judgment of sentence affirmed.