660 A.2d 596

**COMMONWEALTH of Pennsylvania**

v.

**Lawrence HARPER, Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 12, 1995.

Filed May 10, 1995.

Reargument Denied July 20, 1995.

Given that the Sales Agreement conditioned the purchase upon securing "court approval," the objections of Stoecklein were secondary to the Orphans' Court opening the bidding process.

Likewise, the appellant's reliance upon *In re Estate of Hughes*, 517 Pa. 410, 538 A.2d 470 (1988), is misplaced because *Hughes* fell within the first category under 20 Pa.C.S.A. § 3360(a), i.e., when a personal representative shall make a contract not requiring court approval, and consequently distinguishable from the present case. See *Lazarus*, supra.

Ramy I. Djerassi, Philadelphia, for appellant.

David Laigaie, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before BECK, KELLY and HOFFMAN, JJ.

BECK, Judge.

We address, *inter alia,* the propriety of the court's giving an instruction on accomplice liability where appellant was not charged as an accomplice but only as the principal.

In this appeal from the judgments of sentence for first degree murder, robbery and possession of an instrument of crime, appellant asserts that the trial court erred in instructing the jury on accomplice liability and that trial counsel was ineffective for failing to object to the prosecutor's cross-

examination of a defense witness. We find appellant's claims to be without merit and affirm.

Appellant was convicted by a jury and sentenced to life in prison for the fatal shooting of Kevin Evans. The homicide occurred on a Philadelphia street in the early morning hours of April 25, 1992. Evans was exiting a restaurant when appellant snatched a gold chain from his neck and then shot him in the head. Appellant and another man were observed standing over Evans's body, going through his pockets and then fleeing. Appellant also attempted to flee from police when he was arrested several days later.

At trial, the Commonwealth presented two witnesses who were on the street the night of the murder. Henry Blakely testified that he was across the street from the scene of the crime when he heard a gunshot and observed two men standing over the body of the decedent. One of the men wore a waist-length black leather jacket and held a gun; the other man wore a full-length Los Angeles Raiders coat. Blakely saw the armed man in the leather jacket rifle through the victim's pockets. Blakely did not identify appellant as a perpetrator.

Noel Jackson testified that he was standing outside of the restaurant just prior to the shooting and observed appellant there when Evans approached. Jackson knew both appellant and Evans. As the victim entered the restaurant, Jackson watched appellant take a gun from his waistband and heard him declare, "I am going to kill that motherfucker." Jackson began to walk away and as he was crossing the street, he heard a shot. Jackson turned and saw appellant and a man he knew as Andre running toward him. He saw that appellant had in his hand a gold chain. He also observed that appellant was wearing a black leather jacket.

Appellant presented Carl Brooks, an alleged eyewitness at trial. Like Blakely, Brooks also was positioned across the street from the restaurant at the time of the shooting. He testified to seeing two black males, one of whom wore a black coat with writing on the back, approach the victim, attempt to

rob him and shoot him in the head. Brooks identified the shooter as someone he knew named Ski–Bop. On cross-examination, Brooks was asked by the prosecutor why he had not told homicide detectives on the night of the shooting that Ski–Bop was the shooter. He was also asked about his familiarity with appellant and his family, his dislike of Ski–Bop, and the fact that he had been brought to court by appellant's family. Brooks was further cross-examined about a conversation he initiated with the prosecutor the day before his testimony, wherein he stated that he was afraid of appellant's family.

After closing arguments, the prosecutor requested a jury charge on accomplice liability. The court granted the request over appellant's objection. The jury returned a verdict of guilty on all counts and, after a penalty hearing, appellant was sentenced to life in prison.

Appellant's first claim, that the trial court erred in granting the Commonwealth's request for an accomplice charge, is based on lack of notice. The request for the charge, appellant argues, came too late in the proceedings, caused surprise to appellant and foreclosed a defense response to this theory of the case. We note that a conspiracy charge originally made against appellant was dismissed by the court at the preliminary hearing stage.

In his brief, appellant argues that the prosecution ignored both the letter and the spirit of Pa.R.Crim.P. 1119(a), regarding requests for jury instructions, in failing to make a written request for an accomplice liability charge prior to closing statements. With respect to these allegations, the law is clear. First, Rule 1119 does not *require* written requests for jury instructions, it merely states a preference for such. *See Commonwealth v. Donahue,* 428 Pa.Super. 259, 630 A.2d 1238, 1247 (1993), *appeal denied,* 538 Pa. 612, 645 A.2d 1316 (1994). Second, the trial court is not limited to instructing a jury on only those points requested by the parties prior to closing statements. Regardless of whether or when a request for a specific instruction is made by a party, the trial court

must charge the jury appropriately, that is, in a manner supported by the evidence. *See id.* (counsel's request for supplemental jury instruction after judge charged jury was proper where charge appropriate under the facts of the case). *See also Commonwealth v. Danzy,* 225 Pa.Super. 234, 310 A.2d 291 (1973). Appellant's challenges to the timing and manner of the charge, therefore, are meritless.

However, appellant's claim that he was surprised by the instruction on accomplice liability, and that his surprise resulted in prejudice to his defense, warrants a close review of the evidence presented at trial. Essentially, appellant asserts that he had no notice that he would be facing a theory of accomplice liability and could not respond thereto. He also asserts that the evidence did not in any manner support such a theory.

The Commonwealth relies on *Commonwealth v. Perkins,* 485 Pa. 286, 401 A.2d 1320 (1979), as authority for its position that appellant was given proper notice and the instruction was appropriate. As in the instant case, the appellant in *Perkins* was charged only as a principal. Further, the prosecution's request for the accomplice charge came after closing arguments. However, in the *Perkins* case, our supreme court was equally divided on the propriety of the accomplice charge and, as a result, merely affirmed the judgment of sentence.

In his opinion in support of affirmance, Justice O'Brien stated that a defendant could be found guilty under a theory of accomplice liability even if only charged as the perpetrator. *Id.* at 288, 401 A.2d at 1321. Based on *Danzy, supra,* 225 Pa.Super. 234, 310 A.2d 291, Justice O'Brien stated that the timing of the charge was of no moment as the evidence supported an accomplice theory of guilt and the court was therefore required to give the instruction. *Id.* at 292, 401 A.2d at 1323.

Justice Roberts filed an opinion in support of reversal. He noted that the record established the Commonwealth expressly represented at trial that it would not pursue a theory of accomplice liability at trial. The defense relied on that representation, Justice Roberts found, and therefore had no "rea-

sonable notice of accomplice liability, and no reason to anticipate, present evidence, or argue to the jury against accomplice liability." *Id.* at 296, 401 A.2d at 1325.

Subsequent opinions of this court have addressed the issue of the "late accomplice charge," and have established a test for determining whether error occurred in this context based on both expressions in *Perkins*.

In *Commonwealth v. McDuffie*, 319 Pa.Super. 509, 466 A.2d 660 (1983), the informations charged appellant as a principal for robbery and related crimes; however, the trial judge found the appellant guilty as an accomplice. On appeal, the appellant argued that "imposing criminal liability on him as an accomplice ... constitute[d] a fatal variation ... between the allegations and the proof," entitling him to a discharge. *Id.* at 511, 466 A.2d at 661.

The *McDuffie* court, relying on the reasoning in the opinion in support of affirmance in *Perkins*, held that a person need not be charged as an accomplice in order to be found guilty under such a theory and that charging the appellant for the commission of a crime was sufficient to warrant his conviction as an accomplice. *Id.* The court then addressed the concerns stated by Justice Roberts in the *Perkins* opinion in support of reversal. Noting that there had been no express rejection of an accomplice theory by the Commonwealth on which the appellant had relied, the court found that the facts of the case before it were sufficiently distinct from those in *Perkins*. The *McDuffie* court found that the Commonwealth's charge of conspiracy and its inclusion in the complaint of the language "[appellant] did *with another* hold up ... [the victim]" constituted "notice clearly adequate to alert [the] appellant to the potential imposition of criminal liability as an accomplice...." *Id.* at 513, 466 A.2d at 662 (emphasis in original).

In *Commonwealth v. Smith*, 334 Pa.Super. 145, 482 A.2d 1124 (1984), a panel of this court again faced a challenge to an accomplice charge where the appellant had been charged only as a principal. Drawing on both *Perkins* and *McDuffie*, the *Smith* court held that because the appellant had not been

misled by the Commonwealth through the informations or at trial, and because the evidence adduced at trial supported an accomplice theory, the appellant had sufficient notice and the trial court properly instructed the jury. *Id.* at 150, 482 A.2d at 1127. Notice to the appellant was sufficient, the *Smith* court reasoned, because the appellant originally was scheduled to be tried jointly with another person. Further, throughout the trial, the appellant repeatedly attempted to transfer criminal liability to that other person. *Id.*

The holdings of *McDuffie* and *Smith* require that we carefully review the record to determine whether appellant had sufficient notice of the potential for an accomplice theory despite being charged as a principal and whether appellant was misled by the Commonwealth. Our analysis of the transcript leads us to rule in the Commonwealth's favor.

The Commonwealth offered two witnesses who were at the scene of the crime. The first witness, Carl Blakely (who could not identify appellant) testified to observing a guy with a gun leaning over the victim and "another guy standing along with him." Blakely's description of these two men was of such import that the court directed the witness to refer to the man wearing a waist length leather jacket and holding a gun as "number one" and the man wearing a full length Raiders coat as "number two." On cross-examination, defense counsel sought to impeach Blakely with his previous statement to police by repeatedly attempting to get him to admit that it was "number two" who had the gun. *See Smith, supra,* 334 Pa.Super. 145, 482 A.2d 1124 (appellant clearly on notice of potential for accomplice liability where he repeatedly attempted throughout the trial to transfer blame to other person with him at the time of the crime).

The Commonwealth's second witness was Noel Jackson. Jackson identified appellant and testified that he observed appellant with a gun and heard him say that he intended to kill the victim; however, Jackson did not see the actual shooting. He too testified to seeing appellant in the company of another man he knew as Andre. Jackson stated that after he heard the shot, he saw appellant and Andre running toward him and away from the scene.

Appellant's primary witness was Carl Brooks, who testified that the shooter was an individual he knew by the name of Ski–Bop. Although Brooks testified that he did not see appellant that night, he stated that two people were involved in the victim's murder.

■ It is clear from a reading of the entire transcript that in presenting its case, the Commonwealth focused on appellant as the shooter. It is equally clear, however, that the witnesses offered by both parties testified to observing two males involved in the shooting. Under *McDuffie* and *Smith,* this testimony, coupled with the absence of an express rejection of accomplice theory by the Commonwealth, constitutes sufficient notice of the potential for accomplice liability and provides support for the grant of an accomplice instruction. The only thing that can be even remotely characterized as the Commonwealth's "misleading" the defense is the prosecutor's failure to request the accomplice charge prior to closing. As discussed above, this is an insufficient basis upon which to refuse to deliver to the jury an instruction which finds support in the evidence presented at trial. *See Danzy, supra,* 225 Pa.Super. 234, 310 A.2d 291. We find, therefore, that appellant was not deprived of notice in this case and there was no error by the trial court in instructing the jury on accomplice liability.

■ Appellant's second issue is framed as an ineffectiveness challenge addressing the cross-examination of defense witness Carl Brooks. In order to establish ineffective assistance of counsel, appellant must present an underlying issue of arguable merit, a lack of reasonable strategy on the part of counsel, and resulting prejudice. *Commonwealth v. Blount,* 538 Pa. 156, 647 A.2d 199, 203 (1994). The record reveals that Brooks was an illiterate and learning-disabled man who did odd jobs at the nightclub across the street from the restaurant where the victim was killed. Brooks was working at the club on the night of the crime and testified that he saw the shooting and could identify the shooter. As noted previously, he named a man he knew as Ski–Bop as the shooter.

On cross-examination, Brooks was asked by the prosecutor about an incident that occurred outside the courtroom the day before Brooks testified. Apparently, Brooks approached the Commonwealth's attorney and told him that he disliked Ski-Bop, that he had been brought to court by appellant's family, whom he feared, and that he was afraid to be seen by the family talking to the prosecutor. During this encounter, Brooks was shaking and crying. When confronted with questions about the incident and asked by the prosecutor to "tell the truth," Brooks admitted that all of what the prosecutor said was true. Appellant claims that the prosecutor's questioning of Brooks was improper because it "implied the prosecutor knew the truth" and that "truth" differed from Brooks's testimony. Appellant further claims that the prosecutor's questions were "unfairly intimidating" considering Brooks's mental capacity.

■ Appellant attempts to characterize the cross-examination of Brooks as a violation of the well-settled rule that a prosecutor may not express a personal opinion on the credibility of a defense witness. *See Commonwealth v. Bricker*, 506 Pa. 571, 487 A.2d 346 (1985). We fail to see the analogy to *Bricker* here. Our thorough review of the transcript leads us to conclude that Brooks merely was cross-examined for bias, which bias was evidenced by his statements to the prosecutor the previous day, and to which he readily admitted. While the questioning of Brooks, both on direct and cross-examination, proved difficult due to his mental impairment and obvious nervousness and agitation, there was no objectionable behavior on the part of the assistant district attorney. Therefore, counsel could not be ineffective for failing to make an objection. We reject appellant's ineffectiveness claim as it is without underlying merit. *See Commonwealth v. Pierce*, 537 Pa. 514, 645 A.2d 189, 195 (1994) (counsel not ineffective for failing to assert a meritless claim).

Judgments of sentence affirmed.