J-S23035-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                             :           PENNSYLVANIA
                                             :

            v.                            :

LAWRENCE HARPER                  :

            Appellant           :       No. 1094 EDA 2017

Appeal from the PCRA Order March 8, 2017
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0615191-1992

BEFORE:   SHOGAN, J., NICHOLS, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:          **FILED MAY 16, 2018**

Appellant, Lawrence Harper, appeals from the March 8, 2017, order entered in the Court of Common Pleas of Philadelphia County, which denied Appellant's fourth petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546, following an evidentiary hearing. After a careful review, we affirm.

This Court has previously set forth, in part, the facts and procedural history underlying this case as follows:

> Appellant was convicted by a jury and sentenced to life in prison for the fatal shooting of Kevin Evans. The homicide occurred on a Philadelphia street in the early morning hours of April 25, 1992. Evans was exiting a restaurant when Appellant snatched a gold chain from his neck and then shot him in the head. Appellant and another man were observed standing over Evans's body, going through his pockets and then fleeing. Appellant also attempted to flee from police when he was arrested several days later.

_____

*   Former Justice specially assigned to the Superior Court.

At trial, the Commonwealth presented two witnesses who were on the street the night of the murder. Henry Blakely testified that he was across the street from the scene of the crime when he heard a gunshot and observed two men standing over the body of the decedent. One of the men wore a waist-length black leather jacket and held a gun; the other man wore a full-length Los Angeles Raiders coat. Blakely saw the armed man in the leather jacket rifle through the victim's pockets. Blakely did not identify Appellant as a perpetrator.

Noel Jackson testified that he was standing outside of the restaurant just prior to the shooting and observed Appellant there when Evans approached. Jackson knew both Appellant and Evans. As the victim entered the restaurant, Jackson watched Appellant take a gun from his waistband and heard him declare, "I am going to kill that motherfucker." Jackson began to walk away and as he was crossing the street, he heard a shot. Jackson turned and saw Appellant and a man he knew as Andre running toward him. He saw that Appellant had in his hand a gold chain. He also observed that Appellant was wearing a black leather jacket.

Appellant presented Carl Brooks, an alleged eyewitness at trial. Like Blakely, Brooks also was positioned across the street from the restaurant at the time of the shooting. He testified to seeing two black males, one of whom wore a black coat with writing on the back, approach the victim, attempt to rob him and shoot him in the head. Brooks identified the shooter as someone he knew named Ski-Bop. On cross-examination, Brooks was asked by the prosecutor why he had not told homicide detectives on the night of the shooting that Ski-Bop was the shooter. He was also asked about his familiarity with Appellant and his family, his dislike of Ski-Bop, and the fact that he had been brought to court by Appellant's family. Brooks was further cross-examined about a conversation he initiated with the prosecutor the day before his testimony, wherein he stated that he was afraid of Appellant's family.

After closing arguments, the prosecutor requested a jury charge on accomplice liability. The court granted the request over Appellant's objection. The jury returned a verdict of guilty on all

counts[1] and, after a penalty hearing, Appellant was sentenced to life in prison.

*Commonwealth v. Harper*, 660 A.2d 596, 597 (Pa.Super. 1995) (footnote added).

Appellant filed a direct appeal in which he contended the trial court erred in granting the Commonwealth's request for an accomplice charge, and he challenged the prosecutor's cross-examination of defense witness Brooks. This Court found no merit to Appellant's issues, and thus, we affirmed his judgment of sentence. *See id.* Appellant filed a petition for allowance of appeal, which the Supreme Court denied on December 19, 1995. Appellant did not file a writ of *certiorari* with the United States Supreme Court.

On January 14, 1997, Appellant filed his first PCRA petition, counsel was appointed, and the PCRA court denied the petition. Appellant appealed, and this Court affirmed. Appellant filed a second PCRA petition on September 5, 2007, and the PCRA court dismissed the petition. Appellant appealed, and this Court affirmed. On April 25, 2011, Appellant filed a third PCRA petition, and the PCRA court dismissed the petition. Appellant appealed, and this Court affirmed. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on October 11, 2012.

_____

[1] Specifically, the jury convicted Appellant of first-degree murder, 18 Pa.C.S.A. § 2502, robbery, 18 Pa.C.S.A. § 3701, and possession of an instrument of crime, 18 Pa.C.S.A. § 907.

On or about August 12, 2013, Appellant filed the instant *pro se* PCRA petition, to which Appellant attached a sworn affidavit, dated July 22, 2013, from Malik Wilson. In the sworn affidavit, Mr. Wilson indicated the following, which we set forth verbatim:

> On the date 4-25-92[,] I was standing on the corner of Yewdall St. talking to some girls from the club. It was around 2:15 AM or later when a car pulled up in the middle of the street. The guy walk [*sic*] towards the Chinese store when a tall brown skin dude step [*sic*] to him[;] he was around "5/7" or "5/9" wearing a black coat. In seconds, they was [*sic*] fighting! Then the tall dude pulled a gun and shot the guy from the car. The dude with the gun ran pass [*sic*] us. Then I saw who it was[.] His name is (Tyelle Peterson) know [*sic*] as (T.P.) in the streets. He ran down Yewdall St. I look [*sic*] right at him[.] I don't know him personally but his name [is] Ring in the streets [and he is known] as a dude who shoots his gun. I saw a flier on a pole around my way asking for anybody who had information about that night.
>
> Right then I knew I had to tell what I saw so I called the number on the flier.

Appellant's PCRA Petition, filed 8/12/13, Exhibit A.

The PCRA court appointed counsel, who filed an amended PCRA petition on behalf of Appellant on January 3, 2017. In the amended petition, Appellant argued that he had after-discovered evidence which exonerated him, and he sought to invoke the timeliness exception of Subsection 9545(b)(1)(ii). Appellant indicated his mother posted flyers on telephone poles requesting that witnesses of the murder step forward. Specifically, he averred the flyers indicated the following, which we set forth verbatim:

> If there is anyone who might have any information concerning an incident that also involved a shooting, the discharging of guns, gunfire & or [*sic*] the actual shooting of a

- 4 -

male person.[2]  This incident occurred on 54th & [W]oodland Ave. on April 25, 1992.  The time of which the incident occurred was 2 am-2:30 am, the incident happened directly in front of the Chinese store across the St [*sic*] from Zena Night Club.  If you have any information or if you were present or know of anyone who was present, knows about the incident/shooting or were either contacted by the Philadelphia Police or D.A.'s office or was not interviewed but do have something to report or to help the accused family & loved ones we ask that you contact this #. . . . We strongly believe that our loved one was wrongly convicted of a crime he did not do.

Appellant's Amended PCRA Petition, filed 1/3/17, Exhibit B.

Appellant attached to his amended PCRA petition a sworn affidavit, dated May 2, 2016, from his mother.  Therein, his mother indicated the following, which we set forth verbatim:

My family and myself [*sic*] distributed and posted flyers for anyone who might have and [*sic*] information concerning and [*sic*] incident that occurred on 54th & Woodland on April 25, 1992.

I received a call from Mr. Malik Wilson stating that he saw one of the flyers and called the number that was on the flyer[.] [T]hat's how I came in contact with Mr. Wilson.  I thank [*sic*] him and that was it.

*Id.* Exhibit C.

The matter proceeded to an evidentiary PCRA hearing.  At the hearing, Appellant's mother, Carolyn Harper, confirmed that Appellant was convicted of first-degree murder in 1992.  N.T., PCRA hearing, 3/3/17, at 7.  She testified that, from "2000 on up[,]" she posted flyers on telephone poles and

---

[2] We recognize that this is an incomplete sentence.

trees at various times in the vicinity of the murder. *Id.* at 9. In the flyers, she indicated that she was seeking information about the murder. *Id.*

She testified that in 2013 Mr. Wilson, whom she did not know, responded to one of the flyers. *Id.* at 10-11. She asked him to provide her with a sworn affidavit, and he did so on July 22, 2013. *Id.* at 11. Ms. Harper denied paying Mr. Wilson any money in exchange for the affidavit. *Id.* at 12. Ms. Harper indicated that she then contacted Appellant and told him about the affidavit. *Id.* at 12-13.

On cross-examination, Ms. Harper testified that, over the years, she has posted or handed out between two hundred and three hundred flyers. *Id.* at 23. She indicated that she could not remember exactly when she began seeking information via the flyers; however, she admitted that Appellant "was already in jail for a number of years before [she] started to post the [flyers,]" and it might have been just a little less than ten years after he was convicted that she began her flyer campaign. *Id.* at 23-25.

Malik Wilson testified that, on the night of the murder, he was standing at the corner of Yewdall Street and Woodland Avenue with two women when he observed a car stop in the middle of the street. *Id.* at 65-66. He testified that a man exited the car, and then he heard two men arguing, observed a "tussle," and heard a gunshot. *Id.* at 66.

Fearing for his safety, Mr. Wilson ran around the corner and approximately sixty feet away from the shooting. *Id.* at 69. The following

relevant exchange occurred between Appellant's PCRA counsel and Mr. Wilson:

> **Q:** Okay. Then what happened?
>
> **A:** We stopped because, you know, we figured, like, we was out of harm's way. Then we saw the guy turn the corner and he come running down the block.
>
> **Q:** The person that turns the corner and runs down the block, was he the shooter?
>
> **A:** Yes.
>
> ***
>
> **Q:** What if anything did the shooter have in his hands?
>
> **A:** I didn't pay attention to his hands.
>
> **Q:** Did you pay attention to his face?
>
> **A:** I saw him before around the neighborhood but, like, I didn't really know the guy, but I saw him and knew who he was.
>
> **Q:** And who was that person?
>
> **A:** Tyelle Peterson
>
> **THE COURT:** Do you want to repeat the first name for me, please?
>
> **THE WITNESS:** T.P. is Tyelle…Tyelle Peterson.
>
> **THE COURT:** Okay. Thank you.
>
> ***
>
> **Q:** T.P. Okay. Now, Mr. Peterson runs by you, correct?
>
> **A:** Yes.
>
> **Q:** How far from you was he when he passed you?
>
> **A:** We was on one side of the sidewalk and he was on the other. Well, one side of the street and he was on the other side of the street.
>
> **Q:** And approximately what distance was it between you and him when he passes you?
>
> **A:** About, I'd say about twenty to twenty-five feet.
>
> **Q:** Okay. And is there any doubt in your mind that was Tyelle Peterson?

**A:** I'm not understanding what your saying.

**Q:** In other words, as far as you understood, that was him. Am I correct?

**A:** Yes.

**Q:** Now, you heard argument, correct?

**A:** Yes.

**Q:** Then you heard the shots, correct?

**A:** Yes.

**Q:** How do you know Tyelle Peterson was the one that shot Mr. Evans, or the person that died?

**A:** Because by him jumping in the car and the way he pulled off, that's what automatically made me know that it was him.

**Q:** Did you actually see Mr. Peterson shoot?  And the person who died was a Mr. Evans, so I'll use his name.  Did you actually see, besides hearing it, did you actually see Mr. Peterson shoot Mr. Evans?

**A:** I didn't quite see it because I wasn't paying attention to him. But, like as we, like, as the car pulled off and we, you know, went back up to that way, that's when we saw the guy laying [*sic*] there on the ground.

*Id.* at 69-72.

Mr. Wilson testified that, prior to the shooting, he saw Mr. Peterson exit the driver's side of the vehicle, which had stopped in the middle of the road. *Id.* at 73-74.  He then saw Mr. Peterson and Mr. Evans argue and "tussle." *Id.*  Mr. Wilson testified that, after Mr. Peterson ran passed him, Mr. Peterson jumped back in the car and "peeled off real fast." *Id.* at 75.  Mr. Wilson testified that he did not inform the police of what he had observed because he did not want to become involved. *Id.*  However, he testified that he saw a flyer on a pole and, six years after seeing the flyer, he decided to contact the

telephone number on the flyer. *Id.* at 79. Mr. Wilson testified that he spoke to Ms. Harper, and "a couple of months" later, he gave her a sworn affidavit. *Id.* at 81-82.

On cross-examination, Mr. Wilson admitted that, after the car stopped in the middle of the street, he did not notice that the man who exited the car was someone he recognized. *Id.* at 107. Mr. Wilson further admitted that, although he heard two men arguing before the shooting, he could not see their faces. *Id.* at 109. Mr. Wilson never saw a gun and did not see the shooting, but as soon as he heard a shot, Mr. Wilson took off running. *Id.* at 112-14. A man then ran by him and jumped in the car, which had stopped in the street, and took off. *Id.* at 115-19. Mr. Wilson testified that sometime after the shooting he was with a friend, "Chad," and Chad told him that he had heard T.P. was the shooter. *Id.* at 127.

Following the evidentiary hearing, by order entered on March 8, 2017, the PCRA court dismissed Appellant's PCRA petition. This timely, counseled appeal followed. On April 19, 2017, the PCRA court ordered Appellant to file a Pa.R.A.P. 1925(b) statement, and on July 3, 2017, counsel filed a statement on behalf of Appellant.[3] The PCRA court filed a responsive Pa.R.A.P. 1925(a) Opinion on July 13, 2017.

_____

[3] Appellant's counseled Rule 1925(b) statement was untimely filed. However, "where the trial court addresses the issues raised in an untimely Rule 1925(b)

Preliminarily, we must determine whether Appellant's instant PCRA petition was timely filed. *See Commonwealth v. Hutchins*, 760 A.2d 50 (Pa.Super. 2000). "Our standard of review of the denial of PCRA relief is clear; we are limited to determining whether the PCRA court's findings are supported by the record and without legal error." *Commonwealth v. Wojtaszek*, 951 A.2d 1169, 1170 (Pa.Super. 2008) (quotation and quotation marks omitted).

Pennsylvania law makes it clear that no court has jurisdiction to hear an untimely PCRA petition. *Commonwealth v. Robinson*, 575 Pa. 500, 837 A.2d 1157 (2003). The most recent amendments to the PCRA, effective January 19, 1996, provide that a PCRA petition, including a second or subsequent petition, shall be filed within one year of the date the underlying judgment becomes final. 42 Pa.C.S.A. § 9545(b)(1). A judgment is deemed final "at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of the time for seeking review." 42 Pa.C.S.A. § 9545(b)(3).

The three statutory exceptions to the timeliness provisions in the PCRA allow for very limited circumstances under which the late filing of a petition will be excused. 42 Pa.C.S.A. § 9545(b)(1). To invoke an exception, a petition must allege and the petitioner must prove:

---

statement, we need not remand but may address the issues on their merits." *Commonwealth v. Brown*, 145 A.3d 184, 186 (Pa.Super. 2016).

> (i)     the failure to raise a claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or the law of this Commonwealth or the Constitution or law of the United States;
>
> (ii)    the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii)   the right asserted is a constitutional right that was recognized by the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).

"We emphasize that it is the petitioner who bears the burden to allege and prove that one of the timeliness exceptions applies." ***Commonwealth v. Marshall***, 596 Pa. 587, 947 A.2d 714, 719 (2008) (citation omitted). Moreover, as this Court has often explained, all of the time-bar exceptions are subject to a separate deadline. Our Supreme Court has held that any petition invoking an exception must show due diligence insofar as the petition must be filed within 60 days of the date the claim could have first been presented. ***Commonwealth v. Edmiston***, 619 Pa. 549, 65 A.3d 339 (2013); 42 Pa.C.S.A. § 9545(b)(2).

In the case *sub judice*, the Pennsylvania Supreme Court denied Appellant's petition for allowance of appeal from his judgment of sentence on December 19, 1995. Appellant's judgment of sentence became final 90 days thereafter, upon expiration of the time to file a writ of *certiorari* with the United States Supreme Court. ***See*** 42 Pa.C.S.A. § 9545(b)(3); U.S.Sup.Ct.R. 13

- 11 -

(petition for writ of *certiorari* must be filed within 90 days of final judgment). As the instant petition was filed on or about August 12, 2013, it is patently untimely. **See** 42 Pa.C.S.A. § 9545(b)(1). As such, the PCRA court lacked jurisdiction to review the merits of Appellant's petition unless he pled and proved that one of the Subsection 9545(b)(1) exceptions was applicable.

Instantly, Appellant seeks to invoke the timeliness exception of Subsection 9545(b)(1)(ii), claiming the existence of Malik Wilson as an eyewitness, as well as the facts disclosed by him, meet the newly-discovered facts exception.

Our Supreme Court has instructed courts to refer to the time-bar exception at Subsection 9545(b)(1)(ii) as the newly-discovered facts exception to avoid confusing the exception with the after-discovered evidence eligibility-for-relief provision set forth in Subsection 9543(a)(2). **See Commonwealth v. Burton**, 638 Pa. 687, 158 A.3d 618, 628-29 (2017). Our Supreme Court has explained the difference between the two legal concepts as follows:

> To qualify for an exception to the PCRA's time limitations under Subsection 9545(b)(1)(ii), a petitioner need only establish that the facts upon which the claim is based were unknown to him and could not have been ascertained by the exercise of due diligence. However, where a petition is otherwise timely, to prevail on after-discovered evidence claim for relief under Subsection 9543(a)(2)(vi), a petitioner must prove that (1) the exculpatory evidence has been discovered after trial and could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict.

- 12 -

*Id.* at 629. *See Commonwealth v. Brown*, 111 A.3d 171, 178 (Pa.Super. 2015) ("The substantive merits-based analysis [of the after-discovered evidence claim] is more stringent than the analysis required by the 'new facts' exception to establish jurisdiction."). When determining whether a petitioner established a newly-discovered fact exception satisfying Subsection 9545(b)(1)(ii), the PCRA court is not required to conduct a merits analysis of an underlying after-discovered evidence claim. *Brown*, 111 A.3d at 177. Therefore, since the two analyses are distinct, a petition may invoke jurisdiction via the newly-discovered fact exception but fail on the merits of the underlying after-discovered evidence claim. *See id.*

In the case *sub judice*, the PCRA court improperly conflated the analysis for the newly-discovered facts exception with the analysis for the after-discovered evidence eligibility-for-relief provision. Specifically, in its opinion, the PCRA court set forth the timeliness requirements of the PCRA and noted that Appellant was seeking to invoke Subsection 9545(b)(1)(ii), which requires the petitioner to plead and prove "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence." PCRA Court Opinion, filed 7/13/17, at 3-4. However, the PCRA court then concluded that, in order to meet this timeliness exception, Appellant was required to prove the four factors relevant to the after-discovered evidence eligibility-for-relief provision. *See id* at 5. In this vein, the PCRA court concluded Mr. Wilson's PCRA hearing

testimony was incredible and would not likely compel a different verdict. ***See id.*** at 5-6. Thus, the PCRA court found Appellant did not meet the timeliness exception. As is evident, instead of examining whether Appellant pled and proved facts that were unknown to him and could not have been ascertained by the exercise of due diligence, the PCRA court incorrectly grafted additional requirements with regard to Subsection 9545(b)(1)(ii)'s timeliness requirement.

Notwithstanding the PCRA court's error, we affirm the order dismissing Appellant's instant petition. Even if we assume, *arguendo*, that Appellant satisfied the newly-discovered fact time-bar exception set forth in Subsection 9545(b)(1)(ii), as well as the 60-day filing requirement at Subsection 9545(b)(2), Appellant clearly failed to prove the merits of his after-discovered evidence claim for relief. As the PCRA court points out:

> Wilson identified the alleged shooter as Tyelle Peterson ("T.P."). In so doing, he contradicted the trial testimony of defense witness Carl Brooks, who identified the shooter as Ski-Bop. Wilson also contradicted the trial testimony of Commonwealth witness Noel Jackson, who identified [Appellant] as the shooter. All Wilson could say was 20 years after [allegedly] witnessing a murder, he did not remember seeing [Appellant] on the scene. [His PCRA testimony confirmed that he did not actually see the shooting of the victim or see a gun in the hands of Tyelle Peterson.]
>
> Having heard Wilson's testimony and observing his demeanor, the [PCRA] court found that Wilson's testimony lacked credibility. His testimony at trial would not likely compel a different verdict.

PCRA Court Opinion, filed 7/13/17, at 5-6 (citations omitted).

Based on the aforementioned, the PCRA court did not err in holding that Appellant failed to prove that Mr. Wilson, or the facts disclosed by him, "would likely compel a different verdict." ***See Burton***, ***supra***. As this is a necessary factor with regard to Appellant's after-discovered evidence claim, ***see id.***, we affirm the dismissal of Appellant's PCRA petition on this basis.

Affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/18