J-A18038-18

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
YUSUF WARRICK, :
:
Appellant : No. 1696 EDA 2017

Appeal from the Judgment of Sentence April 28, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0011155-2015

BEFORE:  STABILE, J., STEVENS, P.J.E.* and STRASSBURGER, J.**

MEMORANDUM BY STRASSBURGER, J.:       **FILED NOVEMBER 26, 2018**

Yusuf Warrick (Appellant) appeals from the April 28, 2017 judgment of sentence of 30 to 60 years of incarceration after a jury found Appellant guilty of, *inter alia*, one count of third-degree murder and two counts of attempted murder.  Upon review, we affirm.

We glean the following factual summary from the record.  On August 8, 2015, at approximately 2:30 p.m., Appellant and his cousin entered the II Sharp barbershop on the corner of E Street and Westmoreland Street.  Appellant was carrying a large Bissell vacuum cleaner box with one hand.  Upon entering, Appellant's cousin confronted Leanus Smith, who was inside the barbershop, and the two began to grapple.  Appellant's cousin told Appellant to "bring it out," prompting Appellant to retrieve an AK-47 from the vacuum cleaner box.  N.T., 2/16/2017, at 159-161.  Smith attempted to

_____
* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

grab the AK-47 out of Appellant's hands, and a struggle ensued between Appellant and Smith. During the struggle, Appellant bit Smith's hand, Smith bit Appellant's back, and Appellant stabbed Smith in the back.

At approximately the same time as the initial confrontation, Damian Paone was walking on Westmoreland Street when he was approached by Appellant's girlfriend, who asked him to help break up a fight at the barbershop. Paone accompanied her to the barbershop, and observed the struggle over the AK-47. Appellant's girlfriend began to punch Smith, allowing Appellant to gain control of the AK-47. Smith broke free and ran out of the barbershop through the front door.

Appellant chased Smith down E Street and onto Willard Street, shooting at Smith with the AK-47. As a result, Smith suffered a gunshot wound to the back. At the same time, Frank Soto, Jose Ramon Perez, and Jose Rivera were standing on the corner of E Street and Allegheny Avenue.[1] After approximately five gunshots, Perez told his friends that he had been hit and fell to the ground. Perez was transported to the hospital once police arrived on scene, but was pronounced dead shortly thereafter from a gunshot wound to the chest. Rivera suffered a gunshot wound to the left

---

[1] The initial confrontation began in the barbershop at the corner of E Street and Westmoreland Street. Appellant chased Smith down E Street and onto Willard Street, which is parallel to Westmoreland Street and one block south. Allegheny Avenue, where Soto, Rivera, and Perez were located, is also parallel to Westmoreland Street and Willard Street, and is two blocks south of Willard Street.

torso and a graze wound to his left arm. Both Rivera and Smith were transported to the hospital for treatment. Appellant fled the area.

Police were unable to locate the AK-47 Appellant had used during the shooting, and did not find a vacuum cleaner inside the barbershop. They did, however, find one live round of ammunition inside the vacuum cleaner box at the barbershop and two casings at E and Allegheny Streets. The live round had been chambered and extracted from the same AK-47 that discharged the recovered casings.

Appellant was charged with two counts each of attempted murder, aggravated assault, simple assault, and recklessly endangering another person; one count of murder; one count of person not to possess a firearm; and four counts of criminal conspiracy. Appellant proceeded to a jury trial on February 14-22, 2017. The Commonwealth presented a multitude of evidence, including a video recording of the shooting,[2] crime scene photographs, and eyewitness testimony from Paone and Smith.

Appellant chose to testify on his own behalf and raised a heat-of-passion defense. According to Appellant, the vacuum cleaner box contained a vacuum, and he brought it to the barbershop in order to sell it. However, once he entered the barbershop, Smith attacked him, retrieved an AK-47 from the back of the barbershop, and told Appellant he was going to kill him.

_____

[2] The recording depicted the events outside of the barbershop, but did not depict what occurred inside the barbershop.

- 3 -

The two struggled over the AK-47, and Appellant stabbed Smith to gain control of the AK-47. Then, in the heat of passion, Appellant claimed he chased Smith as he ran away, shooting at him with the AK-47.

At the conclusion of the jury trial Appellant was found guilty of third-degree murder, two counts of attempted murder, two counts of aggravated assault, one count of person not to possess a firearm, and one count of possession of an instrument of crime.[3] On April 28, 2017, Appellant was sentenced to a term of 20 to 40 years of incarceration for third-degree murder, and two consecutive terms of five to ten years of incarceration for the two counts of attempted murder.

On May 9, 2017,[4] Appellant filed a post sentence motion claiming that his consecutive terms of incarceration were excessive. The trial court denied Appellant's motion without a hearing on May 12, 2017. On May 25, 2017, Appellant filed a notice of appeal.[5]

---

[3] The trial court granted the Commonwealth's motion to amend the information to add one count of possession of instrument of crime because it was inadvertently omitted from the information after Appellant was held for court at the preliminary hearing. N.T., 2/14/2017, at 10.

[4] Appellant was sentenced on April 28, 2017. Appellant had ten days to file a post-sentence motion, or until Monday, May 8, 2017. Pa.R.Crim.P. 720(A)(1). Appellant's May 9, 2017 motion was one day late, and did not toll the period for filing a direct appeal. However, because Appellant's notice of appeal was filed within 30 days of his judgment of sentence, we have jurisdiction to entertain the appeal.

[5] Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

- 4 -

Appellant first claims that the Commonwealth improperly bolstered the credibility of eyewitnesses Paone and Smith. By way of background, because Paone's and Smith's testimony differed from their statements to police after the shooting, the prosecutor cross-examined Paone and Smith as adverse witnesses in an attempt to impeach them with those prior inconsistent statements. Seeking to explain the deviations from their initial statements about the shooting, the prosecutor also asked Paone and Smith about a private conversation he had with each witness prior to his testimony, wherein each witness allegedly stated he was afraid to testify. On appeal, Appellant claims that "the prosecutor effectively testified to what each witness allegedly said during [] out-of-court conversations [with the prosecutor] – specifically, that they were afraid to testify out of fear they would be labeled a snitch." Appellant's Brief at 15-16.

"[A] prosecutor commits improper bolstering when it places the government's prestige behind a witness through personal assurances as to the witness's truthfulness, and when it suggests that information not before the jury supports the witness's testimony." *Commonwealth v. Reid*, 99 A.3d 427, 447 (Pa. 2014) (citation omitted).

In support of his claim, Appellant cites to three exchanges in the transcript wherein he alleges the Commonwealth improperly bolstered Paone and Smith. First, on direct examination, the Commonwealth asked Paone about being afraid to testify.

Q. Let me ask you something, sir. Are you scared to testify here today?

[COUNSEL FOR APPELLANT]: Objection.

THE COURT: Overruled.

BY [THE COMMONWEALTH]:

Q. Are you scared to testify?

[COUNSEL FOR APPELLANT]: Objection.

[PAONE]: Testify?

[COUNSEL FOR APPELLANT]: Can we see each other at sidebar?

THE COURT: Overruled.

BY [THE COMMONWEALTH]:

Q. Are you scared to have to come into this courtroom and testify about what you know, what you saw that day?

A. No.

Q. No?

A. (nods head)

Q. Didn't you and I meet a couple days ago?

A. Yeah.

[COUNSEL FOR APPELLANT]: Object, Judge. Now I have to see you at sidebar.

THE COURT: Sustained. I'm just going to sustain that. Do the [prior inconsistent] statement.

N.T., 2/15/2017, at 131-132.

Second, on redirect, the Commonwealth returned to whether Paone was afraid to testify by asking about a prior meeting between Paone and the prosecutor.

Q. First of all, you and I met for the first time a couple days ago, do you agree with me? Yes?

A. Yes.

Q. In my office?

A. Yes.

Q. With your mother?

A. Yes.

Q. Didn't you tell me when you and I were sitting there with your mother that you were scared to testify in this homicide trial?

[COUNSEL FOR APPELLANT]: Objection.

THE COURT: Overruled.

BY [THE COMMONWEALTH]:

Q. Sir, didn't you tell me that?

A. I mentioned it.

Q. Okay. What did you mention, sir?

[COUNSEL FOR APPELLANT]: Objection.

THE COURT: Overruled.

[PAONE]: I said – I had mentioned that if – you was mentioning that there was a whole bunch of other people you got to testify here and I was saying why do I have to come if you have so many people.

BY [THE COMMONWEALTH]:

Q. Well, why didn't you want to testify? Didn't you tell me about the streets and how things happen on the street and how you were worried about that?

> [COUNSEL FOR APPELLANT]: Judge, they're right on the verge of saying something. I'm going to have to stand up and request a mistrial. The probative nature of these questions is outweighed by the prejudicial effect. I object.

> THE COURT: Sustained. You got in what you got in, that's it. Let's move on.

N.T., 2/15/2017, at 173-75.

Finally, during Smith's testimony, the Commonwealth asked him on redirect examination about a meeting between the prosecutor and Smith regarding his trial testimony.

Q. Okay. Did you want to participate in this trial? Did you want to come down here on your own and testify in this case?

A. No.

***

Q. Why? Are you worried? You're concerned about your safety on the streets?

> [COUNSEL FOR APPELLANT]: Objection.

> [SMITH]: No.

> THE COURT: Overruled.

> [SMITH]: No.

BY [THE COMMONWEALTH]:

Q. Didn't you – when you and I met yesterday, didn't we talk about that? Didn't you tell me that –

A. Yeah.

[COUNSEL FOR APPELLANT]: Judge, I'm going to object and I'm going to ask for a curative instruction or mistrial.

THE COURT: Sustained. He didn't finish the question, counsel.

[COUNSEL FOR APPELLANT: I know where he's going, Judge.

[THE COMMONWEALTH]: This is in response to direct and counsel has opened the door to this, Judge, about his voluntariness being down there and the threats and everything like that, so this is all relevant.

[COUNSEL FOR APPELLANT]: Judge, if he has a statement where my client says that he feels fearful of a gentleman [who's] been sitting in jail for two years, I want to see it.

THE COURT: Sustained.

BY [THE COMMONWEALTH]:

Q. When you and I met for the first time – first of all, you and I met for the first time yesterday. What did I ask you to do when you came in here and testified? What did I ask you to do?

A. To tell the truth.

Q. That's what I asked you to do, didn't I?

A. Yeah.

Q. To tell the truth. And didn't you tell me, ["]Mr. McCool, I don't want to participate in this because I'm going to be labeled a snitch?["]

[COUNSEL FOR APPELLANT]: Objection.

THE COURT: Overruled.

BY [THE COMMONWEALTH]:

Q. A snitch or a rat on the streets? Didn't you tell me that? Sir?

- 9 -

A. I ain't never say nothing like that, man.

Q. You said that you were concerned about –

A. If I talked to you about something –

[COUNSEL FOR APPELLANT]: Objection.

[SMITH]: -- I talked to you about something.

THE COURT: Overruled.

BY [THE COMMONWEALTH]:

Q. So you don't want to talk about what you and [I] talked about?

A. No, but if you and I talked about something personal, this ain't got nothing to do about courts.

Q. I understand. You're uncomfortable talking about that?

A. What you mean?

[COUNSEL FOR APPELLANT]: Judge, once again I object. I ask that this whole line be stricken.

THE COURT: Overruled. Overruled.

BY [THE COMMONWEALTH]:

Q. That was between you and me, is that what you're saying?

A. Man, I'm done talking.

N.T., 2/17/2017, at 61-64.

According to Appellant, "[t]hese repeated references [to a meeting between the witnesses and the prosecutor] were irrelevant for any purpose other than to impress upon the jury that both witnesses must be telling the truth." Appellant's Brief at 22-23. Moreover, Appellant argues that because Paone and Smith denied being afraid to testify, "it was highly improper for

the prosecutor to tell the jury that they had expressed this fear to him directly." Appellant's Brief at 24.

The Commonwealth counters that it was merely asking questions to explain the witnesses' changed stories and explore potential bias. Commonwealth's Brief at 24-27 (citing, *inter alia*, **Commonwealth v. Harper**, 660 A.2d 596 (Pa. Super. 1995)). Appellant does not contest that a prosecutor may explore explanations for disavowed statements, but rather argues that "when the prosecutor asserted his personal knowledge as to each of the conversations with Paone and Smith, he bolstered the truthfulness of that portion of their testimony." Appellant's Reply Brief at 6.

In **Harper**, this Court examined the Commonwealth's alleged bolstering of a defense witness during cross-examination. That witness readily admitted to the statements he made to the prosecutor prior to testifying. In finding that the prosecutor did not improperly bolster the credibility of a defense witness, and concluding that Harper's trial counsel was not ineffective for failing to make a meritless objection, this Court held that the defense witness "merely was cross-examined for bias, which bias was evidenced by his statements to the prosecutor the previous day, and to which he readily admitted." 660 A.2d at 600.

In this case, the Commonwealth was attempting to bolster the testimony of its own witness. Further, neither Paone nor Smith admitted to

the statements to the prosecutor.[6]  In fact, both witnesses denied telling the prosecutor that they were afraid to testify, and Smith was upset by the Commonwealth's dogged insistence to the contrary.  Thus, the questioning here went far beyond exploring potential biases.  The Commonwealth insisted on essentially testifying through questioning whether the witnesses had told him they were afraid to testify.  Further, the prosecutor emphasized that he had instructed Smith to tell the truth.  These out-of-court conversations were not before the jury, but the prosecutor used them to support the veracity of the witnesses' prior inconsistent statements over their trial testimony.  We conclude that this amounted to the Commonwealth vouching for the credibility of the prior inconsistent statements based on private conversations not before the jury.  **See Reid**, **supra**.  Accordingly, the Commonwealth engaged in improper bolstering.

However, "[r]eversible error occurs only when the unavoidable effect of the challenged comments would prejudice the jurors and form in their minds a fixed bias and hostility toward the defendant such that the jurors could not weigh the evidence and render a true verdict."  **Commonwealth v. Sanchez**, 82 A.3d 943, 981 (Pa. 2013).  Appellant alleges that the improper bolstering was prejudicial to his heat-of-passion defense.  Appellant's Brief at 24-28.  However, Appellant admitted to shooting the AK-

---

[6] At best, Paone testified that he asked the prosecutor why he needed to testify if so many other people were going to testify.  N.T., 2/15/2017, at 174.

- 12 -

47 at Smith several times as Smith ran away from him. Moreover, the jury had the benefit of the video recording of the shooting, which was consistent with Appellant's admission. Given this overwhelming evidence defeating Appellant's heat-of-passion defense,[7] we hold that the Commonwealth's questioning was not so prejudicial to the jury that it could not render a fair verdict. Accordingly, any error here was harmless, and we will not reverse on this basis.

Appellant next claims that the trial court erred in admitting hearsay evidence about the dimensions of the Bissell vacuum cleaner box that Appellant carried into the barbershop and the box's barcode, which identified the model number of the box. Appellant's Brief at 31. At trial, over Appellant's objection, the trial court permitted Officer Berardi to testify about the dimensions of the vacuum cleaner box based upon the scanning of a barcode on the box, which was visible in crime scene photographs, as well as via a Google image search and the Bissell website.[8] This evidence was

---

[7] Appellant's heat-of-passion defense and the evidence defeating it is discussed more *infra*.

[8] Appellant argues on appeal that it is unclear where Officer Berardi obtained the dimensions. Appellant's Reply Brief at 15-16 n.7. While the website page was not admitted or offered, and the questions and answers certainly could have been clearer, our reading of the transcript lends itself to only one logical conclusion, that Officer Berardi obtained the dimensions from the Bissell website based on the model number. **See** N.T., 2/16/2017, at 54, 62-71.

*(Footnote Continued Next Page)*

introduced to support the Commonwealth's theory that Appellant carried the

AK-47 into the barbershop inside of the vacuum cleaner box with the intent

to shoot Smith.

Our standard of review for the admission of evidence is well-settled.

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.
>
> *Commonwealth v. Witmayer*, 144 A.3d 939, 949 (Pa. Super. 2016) (citation omitted). To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. *Commonwealth v. Lopez*, 57 A.3d 74, 81 (Pa. Super. 2012) (citing *McManamon v. Washko*, 906 A.2d 1259, 1268–69 (Pa. Super. 2006)). "[A]n evidentiary error of the trial court will be deemed harmless on appeal where the appellate court is convinced, beyond a

*(Footnote Continued)* ────────────────

Moreover, insofar as Appellant challenges the reliability and credibility of the barcode or website on appeal, such claims challenge the weight of the evidence, not its admissibility. *See Commonwealth v. Chmiel*, 889 A.2d 501, 524-25 (Pa. 2005). *See* Appellant's Reply Brief at 13. Appellant had the opportunity to cross-examine Officer Berardi as to how he determined the dimensions and challenge the reliability of that methodology, but he did not. Throughout his lengthy cross-examination, Appellant did not ask any questions about the dimensions, the barcode, the label on the box, Officer Berardi's use of Google, how Officer Berardi determined the dimensions from the Bissell website, his knowledge of prior versions of that vacuum model, or his lack of knowledge about updates to the Bissell website. *See* N.T., 2/16/2017, at 77-134. Moreover, Appellant failed to raise a weight claim in a timely post-sentence motion, and therefore any purported weight claim is waived. *See Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009); Pa.R.Crim.P. 607(A).

- 14 -

reasonable doubt, that the error could not have contributed to the verdict." *Commonwealth v. DeJesus*, 584 Pa. 29, 880 A.2d 608, 614 (2005) (citing *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155, 164–66 (1979)).

*Commonwealth v. Manivannan*, 186 A.3d 472, 479–80 (Pa. Super. 2018).

The trial court justified its admission of the barcode and the box's dimensions based on judicial notice, the business records exception to the rule against hearsay, and the market reports exception to the rule against hearsay. *See* N.T., 2/16/2017, at 66; Trial Court Opinion, 10/19/2017, at 17-18. Alternatively, the trial court found that any error was harmless because of the overwhelming circumstantial evidence that the AK-47 was hidden inside the box. Trial Court Opinion, 10/19/2017, at 18.

On appeal, Appellant argues that the barcode and dimensions were inadmissible hearsay, and their admission cannot be harmless error because they were relevant to "whether Appellant brought the rifle to the barbershop in the Bissell box, or whether the rifle was already in the barbershop. Such a dispute was critical to Appellant's contention that he did not harbor malice and was guilty only of manslaughter." Appellant's Reply Brief at 16.

Even assuming that both the barcode and the dimensions constituted inadmissible hearsay, we agree with the trial court that any error in admitting that evidence is harmless because it could not have contributed to the verdict.

With regard to third-degree murder, malice is defined as

wickedness of disposition, hardness of heart, cruelty, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured. **Malice may be found where the defendant consciously disregarded an unjustified and extremely high risk that his actions might cause serious bodily injury.** Malice may be inferred by considering the totality of the circumstances.

***Commonwealth v. Windslowe***, 158 A.3d 698, 709 (Pa. Super. 2017) (citation omitted; emphasis added). A heat-of-passion defense is a partial defense to murder and is focused on intent. "A defendant accused of murder may establish that he or she is guilty, not of murder, but rather of voluntary manslaughter, by proving that, at the time of the killing, he or she was acting under a sudden and intense passion resulting from serious provocation by the victim." ***Commonwealth v. Hutchison***, 25 A.3d 277, 314 (Pa. 2011).

In order to successfully argue heat of passion, a defendant must prove (1) provocation on the part of the victim, (2) that a reasonable man who was confronted with the provoking events would become "impassioned to the extent that his mind was incapable of cool reflection," and (3) that the defendant did not have sufficient cooling off time between the provocation and the killing.

***Commonwealth v. Mason***, 130 A.3d 601, 628 (Pa. 2015).

Regardless of whether Appellant hid an AK-47 inside the box, there was ample evidence supporting a conviction of third-degree murder, and defeating Appellant's heat-of-passion defense. As discussed *supra*, the jury observed a video and heard testimony that Appellant chased Smith through public streets, past bystanders and in broad daylight, firing an AK-47 at

- 16 -

Smith's back multiple times. Without a doubt, this evidence alone is sufficient to show that Appellant acted with malice by "consciously disregard[ing] an unjustified and extremely high risk that his actions might cause serious bodily injury." ***Windslowe***, 158 A.3d at 709 (citation omitted). ***See also Commonwealth v. Packer***, 168 A.3d 161, 169 (Pa. 2017) ("The quintessential example of the level of recklessness required to constitute malice is a defendant who shoots a gun into a crowd. 'If a man fires a gun into a crowd and kills another it is murder, because the fact of the reckless shooting of a gun into a crowd is malice in law. That wicked and depraved disposition and that recklessness and disregard of human life is malice.'") (citation omitted).

Additionally, the jury viewed a video of Appellant carrying the vacuum cleaner box into the barbershop with one hand, which Appellant readily admits that he did. Contrary to Appellant's testimony, no vacuum cleaner was found at the barbershop. Instead, a live round that had been chambered and extracted from the murder weapon was found inside the vacuum cleaner box. Moreover, the jury could draw its own conclusions about whether the murder weapon could fit inside the box given that it viewed photographs of the box in the barbershop, and viewed video of Appellant carrying the box with one hand and then carrying the AK-47 as he was shooting it.

Accordingly, even if the testimony constituted hearsay, any error in admitting the box's dimensions was harmless because we are "convinced, beyond a reasonable doubt, that the error could not have contributed to the verdict." **Manivann**, 186 A.3d at 480 (citation omitted). Thus, Appellant is not entitled to relief on this evidentiary claim.

Finally, Appellant claims that the trial court improperly limited Appellant's cross-examination of Smith. Appellant's Brief at 39. At trial, after discussing Smith's time spent in prison, counsel for Appellant asked Smith the following questions.

> Q. So if you had to tell a lie to keep yourself out on the street, would you do it?
>
> A. Yes.
>
> Q. Would you tell a little lie or a big lie?
>
> > [THE COMMONWEALTH]: Objection, Your Honor.
> >
> > THE COURT: Sustained.

N.T., 2/17/2017, at 14.

Appellant argues that the trial court not permitting him to ask the second question was improper because it related to Smith's credibility and was not repetitive. Appellant's Brief at 41. "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of that discretion, or an error of law." **Commonwealth v. Briggs**, 12 A.3d 291, 335 (2011) (citations and

quotation marks omitted). We find that because Smith had already answered the question of whether he would lie to stay out of prison, the trial court did not abuse its discretion in limiting Appellant's vague and redundant question as to whether Smith would tell a big lie or a little lie.

Accordingly, after a thorough review of the record and briefs, we find Appellant has presented no issue on appeal that would convince us to disturb his judgment of sentence.

Judgment of sentence affirmed.

Judge Stabile joins the memorandum.

PJE Stevens concurs in the result.

*Judgment Entered.*

Joseph D. Seletyn, Esq.
*Prothonotary*

*Date: 11/26/2018*