J-A09007-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA  :   IN THE SUPERIOR COURT OF
                      :           PENNSYLVANIA
                      :
           v.               :
                      :
                      :
DEMBO SANNOH,           :
                      :
         Appellant.     :    No. 2441 EDA 2017

Appeal from the Judgment of Sentence, May 18, 2017,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s):  CP-51-CR-0013640-2014.

BEFORE:  KUNSELMAN, J., MURRAY, J., and PELLEGRINI*, J.

MEMORANDUM BY KUNSELMAN, J.:         **FILED JUNE 07, 2019**

Dembo Sannoh appeals from his judgment of sentence imposed following a bench trial where he was convicted of aggravated assault, simple assault, recklessly endangering another person, possession of an instrument of a crime, possession with intent to deliver, and possession of a small amount of marijuana.[1]  We affirm Sannoh's drug-related convictions.  However, for the reasons stated below, we reverse his remaining convictions, vacate his judgment of sentence, and remand for resentencing.

The trial court summarized the facts presented at trial as follows:

> The complainant, Mr. Marquel Foy, testified that on the afternoon of August 10, 2014, he had gone with a "friend," to a gas station located at 58th Street and Baltimore Avenue in the City of Philadelphia.  The "friend" asked him to go and

---

[1] 18 Pa.C.S.A. §§ 2702(a), 2701(a), 2705, and 907(a), and 35 Pa.C.S.A. §§ 780-113(a)(30)-(31).

---

\*   Retired Senior Judge assigned to the Superior Court.

see "about getting some weed" and also asked to bring a gun for his safety. Sometime after being driven to the location by his "friend's" girlfriend, a silver Mercedes SUV pulled up and a male with "dreads," later identified as [Sannoh], exited the driver seat. [Sannoh] instructed Mr. Foy to get in the front passenger seat of the car and "deal with my man."

While [Sannoh] waited outside, with his "friend", Mr. Foy entered the vehicle and asked where the marijuana was. [Sannoh] lifted up the top of the center console, showing him a "little bud" of marijuana, which was less than the two ounces he was there to buy. He testified that when "I turned around toward the guy in the backseat to look for the weed. And that's when I heard the shot go off." Upon hearing the gunshots, Mr. Foy experienced a burning sensation in his left elbow. He got out of the car and began running. As he was running, Mr. Foy was shot in his right shin, breaking his right tibia, and in the left side of his stomach.

Mr. Samuel Turner, the current manager of the Philadelphia Courts First Judicial District's Electronic Monitoring Unit, testified that, on the afternoon of August 10, 2014, he was a Lieutenant with the First Judicial District Warrant Unit, serving warrants with his team of officers in the vicinity, when he heard gun shots. On arriving at the scene, members of his unit pursued several individuals fleeing the scene. He also observed [Sannoh] sitting in the Mercedes SUV, with several windows shot out. On removing him from the vehicle, [Sannoh] stated "his friend had shot somebody and ran off."

Philadelphia Police Sergeant Jonathan Stralo testified that, on August 10, 2014, he was assigned to the warrant unit when he responded to the sound of gunfire at the gas station. On arriving, he observed Mr. Foy holding a gun, attempting to leave the scene. On taking Mr. Foy into custody, he observed that Mr. Foy had suffered "several gunshot wounds; leg, abdomen, and elbow."

Philadelphia Police Detective, Robert Conway, testified that he was the assigned detective investigating the shooting. As part of his investigation, Detective Conway took two handwritten statements from Mr. Foy at the Hospital of the University of Pennsylvania on August 11,

2014, which Mr. Foy reviewed and signed in Detective Conway's presence. He described Mr. Foy as being cooperative in talking to him.

Detective Conway also testified that on arriving at the scene he observed [Sannoh's] Mercedes SUV in the parking lot with the rear window and the passenger's side windows shot out. On further inspection of the SUV, he discovered a 9mm hand gun on the floor behind the passenger seat as well as several shell casings. He also described the car as having "a very strong odor of fresh Marijuana…" he testified that the odor was so strong that he "expected to find bulk amount or at least an ounce or so. As if there was marijuana out just in the car recently." "Very Strong."

Mr. Antana Gray, [Sannoh's] co-defendant, testified that [Sannoh], after calling him to hang out, picked him up at his home and drove to the gas station. On arriving, Mr. Gray got into the back seat, because they were "meeting with someone." He sat behind the front passenger seat and placed the loaded gun he was carrying in the pocket in front of him. After Mr. Foy got into the front passenger seat, [Sannoh] remained outside talking to Mr. Foy through the driver's side door. Listening to the conversation between them, it was clear to Mr. Gray that [Sannoh] knew who Mr. Foy was and was there to meet him. Mr. Gray also testified that at some point during [Sannoh's] conversation with Mr. Foy, he saw a "bud" of marijuana, approximately an inch long, with Mr. Foy asking "where's the rest of it?" It was at this point that Mr. Gray began shooting at Mr. Foy. Mr. Foy then exited the vehicle and Mr. Gray continued shooting at him.

When the shooting ended, Mr. Gray testified that he left the scene and walked to his home, which was about three blocks from the scene of the shooting. He knew he was going to jail and wanted to get his affairs in order. He surrendered to police the next morning.

Trial Court Opinion, 6/16/18, at 8-11.

Sannoh was arrested and charged the same day. Sannoh filed a motion to quash the information which the trial court denied without a hearing after

Sannoh's former counsel did not appear. After multiple continuances, the matter went to a bench trial on March 3, 2017. The court convicted Sannoh on the aforementioned charges. The court sentenced Sannoh to an aggregate prison term of five to ten years. Sannoh timely appealed, however, prior counsel withdrew before complying with the trial court's order to issue a 1925(b) statement. The court appointed current counsel on January 22, 2018 who submitted a 1925(b) statement on March 6, 2018. Both the trial court and Sannoh have complied with Pa.R.A.P. 1925.

Sannoh raises the following two issues on appeal:

> 1. Whether the court's verdict was based upon insufficient evidence so inherently unreliable that the resultant verdict was based on surmise and conjecture.

> 2. Whether [Sannoh] was denied procedural due process when the court failed to conduct a hearing on his motion to quash the information.

*See* Sannoh's Brief at 1.

Sannoh challenges the verdicts for each of his convictions. We will first address his sufficiency challenge for his drug convictions.

In reviewing a challenge to the sufficiency of the evidence, we must determine whether viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Lewis*, 911 A.2d 558, 563–64 (Pa. Super. 2006). When reviewing the evidence adduced at trial, the court may not weigh the evidence

and substitute its judgment for that of the fact-finder. **Commonwealth v. Derr**, 841 A2d 558, 560 (Pa. Super. 2004). The fact-finder, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. **Commonwealth v. Hunzer**, 868 A.2d 498, 505 (Pa. Super 2005).

However, if the facts relied on by the fact-finder are so weak or inconclusive that, as a matter of law, no probability of fact may be drawn from the circumstances, then the conviction in question cannot stand. **Commonwealth v. Kim**, 888 A.2d 847, 851–52 (Pa. Super. 2005) (citations omitted). Stated differently, "[a]lthough the Commonwealth does not have to establish guilt to a mathematical certainty and may in the proper case rely wholly on circumstantial evidence, the conviction must be based on more than mere suspicion or conjecture." **Commonwealth v. Thomas**, 561 A.2d 699, 704 (Pa. 1989) (citations omitted).

Sannoh argues that the Commonwealth presented insufficient evidence to convict him of either possession with intent to deliver or marijuana possession. The Controlled Substances Act defines the relevant offenses as follows:

> (a) the following acts and the causing thereof within the Commonwealth are hereby prohibited:
>
> (30) Except as authorized by this act, the manufacture, delivery, or with intent to manufacture or possession with intent to deliver, a controlled substance by a person not registered under this act . . .

(31) Notwithstanding other subsections of this section, (i) the possession of a small amount of [marijuana] only for personal use; (ii) the possession of a small amount of [marijuana] with the intent to distribute it but not to sell it; or (iii) the distribution of a small amount of [marijuana] but not for sale.

For purposes of this subsection, thirty (30) grams of [marijuana] or eight (8) grams of hashish shall be considered a small amount of [marijuana].

35 P.S. § 780-113(30)-(31).

In concluding the Commonwealth presented sufficient evidence to convict Sannoh on these charges, the trial court reasoned:

It is clear from the evidence at trial that the parties came together to consummate a drug sale. As noted, [Foy] testified he was driven to the scene in order to see "about getting some weed" and was asked to bring a gun for safety. [Gray] also testified that [Sannoh] drove him to the scene for the purpose of meeting with [Foy] and that he too was armed. They both testified that during the conversation between [Foy] and [Sannoh], [Sannoh] revealed a bud of marijuana in the center console of the car. Furthermore, Detective Conway testified that, in addition to discovering a 9mm hand gun and shell casings in [Sannoh's] car, he noted a "very strong odor of fresh Marijuana" and "expected to find bulk amount of or at least an ounce or so." [Gray] also testified that he left the scene immediately after the shooting, to get his affairs in order, surrendering to police the following day.

The [c]ourt, in weighing the evidence before it, found that it was reasonable to infer from the facts presented at trial, that [Sannoh] was not a mere bystander, but in fact went to the gas station with [Gray] for the purpose of engaging in the sale of drugs. Although no marijuana was recovered, both [Foy] and [Gray] testified that a "bud" of marijuana had in fact been present in [Sannoh's] vehicle immediately before the shooting commenced, and that he knew [Foy], had in fact, actively participated in the

attempted transaction. The evidence was therefore sufficient to sustain his conviction for PWID.

Trial Court Opinion, 8/16/18, at 15-16. We agree.

Sannoh takes issue with the fact that the purported drugs were never introduced into evidence, nor was there expert testimony to prove the narcotic property of the drug "bud." In other words, Sannoh mainly argues that the Commonwealth failed to show he possessed drugs due to the lack of physical evidence. However, "circumstantial evidence may be used to establish a defendant's possession of drugs or contraband." *Commonwealth v. Vargas*, 108 A.3d 858, 868 (Pa. Super. 2014), citing *Commonwealth v. Macolino*, 469 A.2d 132, 134-35 (Pa. 1983). "The Commonwealth need not prove [a defendant] had actual possession of the drugs. Instead it can prove [a defendant] had constructive possession." *Commonwealth v. Brown*, 701 A.2d 252, 254 (Pa. Super. 1997). "Constructive possession is an inference arising from a set of facts that possession of the contraband was more likely than not." *Commonwealth v. Hopkins*, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted). Constructive possession exists where a defendant has power of control over the drugs and intends to exercise that control. *Id*. Further, such possession may be established by the totality of the circumstances. *Id.*

Here, the record establishes that Sannoh and Gray met with Foy to sell him marijuana. Once Sannoh arrived at the gas station, he instructed Foy to "deal with [his] man." N.T. 3/3/17, 27-28, 43-44. After entering the vehicle, Foy asked, "Where the weed at?" *Id*. at 44-45. In response, Sannoh lifted up

the center console and pulled out a small amount of marijuana. Although police did not recover the marijuana, both Gray and Foy confirmed these events, and Detective Conway testified that he smelled a strong odor of marijuana in the car. The totality of the circumstances establish that Sannoh had control over the drugs and exercised such control.

Accordingly, we find the trial court did not err in concluding the above evidence sufficiently established that Sannoh possessed a controlled substance and did so with the intent to deliver, and that he knowingly possessed a small amount of marijuana. 35 Pa.C.S.A. 780-113(a)(30)-(31).

Next, we turn to Sannoh's sufficiency challenge regarding his aggravated assault conviction. Sannoh argues that the trial court convicted him based on the fact "that he owned the vehicle in which a shooting occurred, he was seen on a video in the company of the victim of the shooting and he spent an unknown amount of time in the company of the shooter." *Id*. at 11. He asserts that the record was completely devoid of any evidence of criminal intent on his part.

To prove Sannoh was guilty of aggravated assault, the Commonwealth was required to show that he (1) attempted to cause serious bodily injury to another or causes such injury intentionally, knowingly, recklessly under circumstances manifesting extreme indifference to the value of human life. 18 Pa.C.S.A. § 2702(a)(1).

The trial court provided the following rationale, relying on accomplice liability, in support of the entirety of Sannoh's convictions:

In Pennsylvania, 18 [Pa.C.S.A] 306(a) and (b)(3) provides that a person is guilty of a crime if he is an accomplice of another person in the commission of a crime. An accomplice is defined by 18 [Pa.C.S.A] 306(c)(1)(ii) as a person who "aids or agrees or attempts to aid such other person in planning or committing" the crime. It has long been recognized that an individual need not be charged as an accomplice in order to be found guilty under such a theory. *Commonwealth v. McDuffie*, 466 A.2d 660 (Pa. Super. 1983). […] In *Commonwealth v. Murphy*, 844 A.2d 1228, 1235 (Pa. 2004), our Supreme Court established a two prong test that must be employed to hold an accomplice liable, in holding that: "First, there must be evidence that the defendant intended to aid or promote the underlying offense. Second, there must be evidence that the defendant actively participated in the crime by soliciting, aiding, or agreeing to aid the principal. While these two requirements may be established by circumstantial evidence, a defendant cannot be an accomplice simply based on evidence that he knew about the crime or was present at the crime scene. There must be some additional evidence that the defendant intended to aid in the commission of the underlying crime, and then did or attempted to do so. With regard to the amount of aid, it need not be substantial so long as it was offered to the principal to assist him in committing or attempting to commit the crime."

[Sannoh] was initially charged with, and later found not guilty on the charge of criminal conspiracy to commit murder, which put him "on sufficient notice of the Commonwealth's intention to argue a link between that defendant and another person in the commission of the crimes in question." *Commonwealth v. McDuffie*, 466 A.2d 660, 662 (Pa. Super. 1983). [Sannoh] is correct in asserting that there was no evidence placing Mr. Gray's gun in his hands or that he actively participated in the shooting of Mr. Foy. There was, however, sufficient evidence to support his conviction on the charge of aggravated assault on the theory of accomplice liability. *Andrews* made it clear that the evidence also supports [Sannoh's] conviction on the charge of PIC, even though his co-defendant actually possessed the gun.

Trial Court Opinion, 7/16/18, at 13-15. We cannot agree.

After review of the record, we agree with the Commonwealth's acknowledgement that Sannoh could not be convicted of aggravated assault and the remaining charges based upon accomplice liability. As the Commonwealth states, Sannoh's "shared intent to sell drugs does not prove a shared intent to commit aggravated assault against a buyer." Commonwealth's Brief at 11. At most, the Commonwealth showed that Sannoh was merely present at the crime scene when Gray shot Foy. Mere presence is insufficient to support a conviction.

To convict Sannoh under a theory of accomplice liability, the Commonwealth needed to demonstrate that Sannoh aided or agreed to assist Gray in shooting Foy. No such evidence exists. Indeed, Gray testified that he had not told Sannoh he was armed. *See* N.T. 3/3/17, 146-55. To conclude that Sannoh knowingly and voluntarily cooperated or aided Foy in the shooting based on the record would be nothing more than conjecture. Therefore, we find the trial court erred in concluding that sufficient evidence existed to convict Sannoh of aggravated assault. Further, because simple assault and REAP require the defendant have a requisite *mens rea* to commit harm, Sannoh's convictions cannot stand based on the evidence of record.

Next, Sannoh argues that the evidence was insufficient to support his conviction for possession of an instrument of a crime. We agree. One is guilty of this offense "if he possesses any instrument of crime with intent to employ it criminally." 18 Pa.C.S.A. § 907. Similarly, as we discussed above, the Commonwealth did not present evidence that demonstrated Sannoh had any

inclination the shooting would occur, or that he participated in it. The Commonwealth did not present evidence indicating that Sannoh even knew Gray was carrying a firearm. Accordingly, insufficient evidence exists to convict Sannoh for possession of an instrument of a crime.

In his last issue, Sannoh argues that he was denied procedural due process when the court ruled on his motion to quash the information without conducting a hearing. We find Sannoh has waived this claim.

Sannoh filed a motion for reconsideration in response to the trial court's denial of his *habeas corpus* petition. This motion did not include a due process violation claim. Sannoh does not indicate where in the record he preserved this claim. "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal." **Commonwealth v. Strunk**, 953 A.2d 577, 579 (Pa. Super. 2008). We note, that even if Sannoh had preserved this claim, it would be of no consequence. A defect in the preliminary hearing is immaterial after a defendant has gone to trial and is convicted of the crimes charged. **Commonwealth Stultz**, 114 A.3d 865, 882 (Pa. Super. 2015). We therefore dismiss this claim.

In sum, Sannoh's convictions for possession with intent to deliver and possession of marijuana are affirmed; Sannoh's convictions for aggravated assault, simple assault, recklessly endangering another person, and possession of an instrument of a crime are reversed, and Sannoh's judgment of sentence is vacated, and the case is remanded for resentencing. **See Commonwealth v. Goldhammer**, 517 A.2d 1280, 1283 (Pa. 1986) (stating

generally if appellate court upsets sentencing scheme, then remand for resentencing is warranted).

Convictions affirmed in part and reversed in part. Case remanded for resentencing. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/7/19